IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SHANE A. STUBBS,<br><br>           Plaintiff<br><br>VS.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>           Defendant | NO. 5:08-CV-369 (CAR)<br><br>PROCEEDINGS UNDER 42 U.S.C. § 405(g)<br>BEFORE THE U. S. MAGISTRATE JUDGE |

## RECOMMENDATION

On October 1, 2001, Plaintiff SHANE A. STUBBS, who was a minor child at the time, protectively filed an application for payments under Title XVI, alleging that he became disabled on October 1, 1995 (Tr. 53, 54). The Commissioner ultimately concluded that Plaintiff was under a disability and that his disability began on October 1, 2001 (Tr. 30). When Plaintiff reached the age of 18, his case was re-evaluated, and the Commissioner determined that he was no longer disabled as of November 1, 2006 (Tr. 28-29, 34-42). Plaintiff Stubbs requested a hearing before the ALJ on the issue of his age-redetermination which resulted in the February 5, 2008, ALJ decision denying his claim (Tr. 15-27). On August 29, 2008, the Appeals Council denied a request for review of the ALJ's decision (Tr. 6-9). This case is now ripe for review, and this Court has subject matter jurisdiction pursuant to sections) 205(g) and 1631(c)(3 of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3).

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . .The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Section 1614(a)(3)(H) of the Social Security Act provides that individuals who are eligible for Supplemental Security Income benefits as children for the month preceding the month in which they attain age 18, must have their disability redetermined under the rules for disability used for adults; the definition of disability for adults who file new applications for Supplemental Security Income benefits based upon disability must be applied.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Commissioner employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. *Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

Plaintiff Stubbs was 18 years old at the time of his redetermination and 19 years old at the time of the ALJ's decision (Tr. 27, 29, 47). He graduated from high school with a special education diploma; at the time of his hearing, he was enrolled in technical school where he was learning to be a welder (Tr. 493-94, 22). Plaintiff has never worked (Tr. 21).

The ALJ concluded that plaintiff had "severe" impairments of a learning disorder and attention deficit/hyperactive disorder but that he retained the residual functional capacity for a full range of work that required the performance of simple tasks which had to be done in a structured environment, which required no more than limited public contact, and where there would be help setting and reaching goals.

Plaintiff asserts that the ALJ did not properly evaluate the evidence regarding his mental impairment and largely based his residual functional capacity assessment on the perception that plaintiff had succeeded in technical college and his father's opinion that plaintiff could perform simple work.

The record shows that Dr. Ali Ahmadi conducted a psychiatric evaluation of plaintiff Stubbs on May 10, 2005 (Tr. 322). Plaintiff reported problems included mood problems, impulse control, inattention, lack of concentration, anxiety, and memory problems. *Id.* At that time, plaintiff was seeing Dr. Marc Prigitano for psychotherapy. *Id*. Dr. Ahmadi's diagnosis included ADHD, inattentive type, and Bipolar NOS (Tr. 323). Dr. Ahmadi continued Mr. Stubbs on some of the medications that he was taking as prescribed by his previous psychiatrist and adjusted or changed some others (Tr. 323- 324).

Dr. Marc Prigitano provided plaintiff psychotherapy beginning on May 23, 2005 (Tr. 345). Plaintiff was reported to have a history of depression and ADHD with treatment for those conditions. *Id*. He was also in special education and had difficulty reading social cues and preferred a regimented lifestyle. *Id.* Dr. Prigitano's diagnoses for plaintiff included ADHD, LD, a speech disorder, and depressive disorder NOS (Tr. 328, 329, 332, 334).

On June 14, 2006, Dr. Prigitano noted that plaintiff was off his medication since he had graduated from high school and wanted to enter the military (Tr. 327). However, plaintiff had a "hard time functioning without help" and was put back on his medication after a month. *Id*. Dr. Prigitano also thought joining the military was not a "realistic goal". *Id.* As of the September 6, 2006, visit, Dr. Prigitano noted that plaintiff was scheduled to go to technical school in an effort to learn welding (Tr. 325).

On the visit of January 30, 2007, it was reported that plaintiff was not taking his medication consistently and was not being truthful (Tr. 468). Dr. Prigitano noted that plaintiff's activity level was lethargic, his insight was fair, and his judgment was limited. *Id*. On July 24, 2007, Dr. Prigitano noted that plaintiff was taking welding in school (Tr. 407). Plaintiff Stubbs also reported having a welding job in which his employer was "basically exploiting him". *Id.*

Dr. Ronnie Blount also provided psychiatric treatment to plaintiff since August of 2005 (Tr. 353). Dr. Blount's diagnosis for plaintiff included attention deficit disorder and major depression, and Dr. Blount prescribed various medications for plaintiff. *Id*. Dr. Blount also assessed Mr. Stubbs' abilities as being "poor" in a number of areas. *Id.* Dr. Blount thought that plaintiff's prognosis was "fair." *Id*.

On January 18, 2007, plaintiff's parents complained that he was not taking his medications and was more distracted, oppositional, and was doing worse in school (Tr. 446). On March 13, 2007, plaintiff's report card showed low marks in school (Tr. 445). On May 8, 2007, Dr. Blount noted that plaintiff was receiving tutoring in math (Tr. 443). On August 7, 2007, Dr. Blount noted that plaintiff said he would attend school in September and planned to go to the Army (Tr. 458).

After the ALJ rendered the unfavorable decision, plaintiff submitted a psychological assessment to the Appeals Council which denied review. Dr. Mark Prigitano performed the assessment on April 2, 2008, and identified continuing problems related to his "previously diagnosed attention deficit disorder" (Tr. 481). *Id.* Dr. Prigitano also noted that plaintiff was "experiencing significant anxiety," lacked self confidence, and has "low self-esteem." *Id.* Dr. Prigitano's diagnosis included dysthymic disorder, generalized anxiety disorder, attention deficit

4

hyperactivity disorder, combined, phonological disorder, and a learning disorder (Tr. 481). He noted that plaintiff was not taking any medication for the treatment of depression, anxiety, or ADD but believed that the use of medication could provide plaintiff with relief from some of "his more troublesome symptoms"; he also thought that modifications in school, such as extra time to complete tests and written assignments, would be helpful (Tr. 482).

Although the ALJ did consider plaintiff's enrollment in trade school learning the welding trade (Tr. 25), he considered other evidence as well. The ALJ noted that plaintiff and his father indicated he had problems with math but that plaintiff liked the trade school and did pretty well with hands-on training (Tr. 25, 501, 505, 506-07).

Plaintiff Stubbs had his own cell phone, and drove himself to and from school, as well as other places (Tr. 25, 508). He was also able to travel to Ohio in December 2007 and visit with his grandparents (Tr. 25, 496-97). The ALJ also considered the mental health record which indicated plaintiff had been doing well in recent years (Tr. 22, 348, 349, 350, 351).

The State Agency psychologists reviewed the available medical evidence and concluded plaintiff Stubbs would have a few moderate limitations but that he was not significantly limited in most areas of mental, work-related functioning (Tr. 370, 372-74; 388, 390-92). Their findings are consistent with the ALJ's RFC determination (Compare Tr. 24 with Tr. 370, 372-74; 388, 390-92).

The ALJ limited plaintiff to work that required the performance of simple tasks which had to be performed in a structured environment; to work where there would be help setting and reaching goals, and to work which required no more than limited public contact (Tr. 24). The ALJ presented these limitations to the VE in a hypothetical question (Tr. 512, 524). Plaintiff's attorney was given the opportunity to question the VE (Tr. 513-16). The VE testified that such an individual could work as a groundskeeper, a cook helper, and a small products assembler. (Tr. 512) The ALJ clarified his hypothetical, and described

> an individual who can perform simple tasks only, which must be done in a structured environment......the individual would have little or no discretion as to how the job should be performed. My rationale in that is that I want to relieve this individual from the burden of making decisions with respect to how the job is to be done. The person should also receive regular feedback, at least on a weekly basis, as to how well they're doing. But there is no implication that the supervisor needs to be physically present on a continual basis.

(Tr. 514). The VE testified that the clarification did not change his opinion.

5

Plaintiff contends that the record does not support the conclusion that he could be vocationally successful without "special conditions."  The Commissioner's regulations make it clear that work done under "special conditions" does not necessarily show that a person could perform substantial gainful activity. For example, jobs where the individual received "special assistance" or was "permitted to work at a lower standard of productivity" were examples of such "special conditions". 20 C.F.R. Section 404.1573(c)(1); (5).

However, the record does provides substantial evidence for the conclusion.  The opinions of the state agency psychologists support the residual functional capacity used by the ALJ, as described above.  Testimony from the VE also supports it.  Counsel for plaintiff asked the VE to explain the difference between the work setting described in the three jobs he identified earlier (groundskeeper, cook helper, and small products assembler) and a more structured work environment at organizations such as Goodwill or Easterseals for persons who are disabled.  The VE testified that the presence of the work supervisor in the area at all times at the more structured environments is more immediate than the jobs he described but that the nature of the jobs such as cook helper necessitated proximity in a small work place and that with the small product assembler job, the feedback would be immediate by the nature of the job. (Tr. 515).

The ALJ also noted that both plaintiff's father and stepmother agreed that plaintiff was capable of performing a job as long as it required only simple work. (Tr. 22).  The ALJ also noted that plaintiff Stubbs was not taking any medication and indicated that he had no side effects when he did take medication. (Tr. 22).  The ALJ further noted that plaintiff stated in the hearing in response to a question by the ALJ that he was not aware of any reason why he could not be gainfully employed if he wanted to be. (Tr. 25).

Although plaintiff Stubbs certainly continues to have issues from his impairments, those impairments were taken into account in the residual functional capacity determined by the ALJ and supported by the record.   In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.

In light of the foregoing, it is the **RECOMMENDATION** of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405 (g).  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the district judge assigned to this case, **WITHIN FOURTEEN (14) DAYS** of receipt thereof.

SO RECOMMENDED, this 25th day of FEBRUARY, 2010.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE

msd